**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SA CV12-01432 JAK (FFMx) | Date | March 11, 2013 |
| Title | Callidus Software, Inc. v. Xactly Corporation | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING DEFENDANT XACTLY CORPORATION AND CHRISTOPHER CABRERA'S MOTION TO TRANSFER (DKT. 23)   JS-6

**I.      Introduction**

Callidus Software, Inc. ("Plaintiff") brings this action against Xactly Corporation ("Xactly") and Christopher Cabrera ("Cabrera") (collectively "Defendants") alleging patent and trademark infringement and other related, unlawful activities. Plaintiff's Second Amended Complaint ("SAC"), Dkt. 48, advances ten causes of action: (i) infringement of U.S. Patent No. 7,774,378; (ii) infringement of U.S. Patent No. 8,046,387; (iii) infringement of U.S. Patent No. 6,473,748; (iv) trademark infringement in violation of 15 U.S.C. § 1051, *et seq.*; (v) false advertising in violation of 15 U.S.C. § 1125(a); (vi) false and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.*; (vii) defamation in violation of Cal. Civ. Code §§ 45, 46, *et seq.*; (viii) intentional interference with prospective economic advantage; (ix) breach of contract; and (x) unfair competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

Defendants have moved to transfer venue to the Northern District of California (the "Motion"). Dkt. 23. On February 25, 2013, the Court held a hearing on the Motion during which it stated its tentative views, heard oral argument, and took the matter under submission. Dkt. 60. For the reasons stated in this Order, the Court GRANTS the Motion.

**II.     Factual Background**

Plaintiff and Defendant Xactly "are direct competitors in the business of making, marketing, and selling enterprise sales performance management and incentive management solutions" that are designed to assist businesses in gaining insights into the important factors that contribute to their sales. SAC ¶ 1, 3. Both Plaintiff and Defendant Xactly offer their customers "Multi-tenant Software as a Solution" ("SaaS") – "a software delivery model whereby a single instance of the software runs on a central server in the 'cloud' (i.e., the servers hosting the software and associated data are not located on-site at customers' location but are accessed by the customers via the Internet from a remote location) and the single instance serves multiple customers." *Id.* at ¶ 1. Defendant Cabrera was an employee of Plaintiff from

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV12-01432 JAK (FFMx) | Date | March 11, 2013 |
|---|---|---|---|
| Title | Callidus Software, Inc. v. Xactly Corporation | | |

December 1998 until February 28, 2005. *Id.* at ¶ 4. Defendant Cabrera founded Xactly in March 2005 – "a month after he left Callidus" – and "is presently the President and CEO of Xactly . . . and serves on its Board of Directors." *Id.* Plaintiff's central allegation in this action is that, immediately after leaving Callidus, Cabrera formed Xactly, thereby breaching a Separation Agreement negotiated and entered into by Plaintiff and Defendant in the Northern District of California. *Id.* at ¶¶ 79-82. Plaintiff further alleges that Defendants then began infringing Plaintiff's patents and trademarks, made defamatory remarks about Plaintiff, and engaged in unfair competition and improper marketing. *See id.* at ¶¶ 11-34.

Plaintiff is headquartered in Pleasanton, California, which is within the geographic area included in the Northern District of California (the "Northern District") of the federal district court system. Schmidt Decl., Exh. 2 at 3, Dkt. 24 ("Callidus is strongly connected to the Northern District of California, where Callidus maintains its headquarters, certain servers, and its research and development facilities."). All board meetings are held there and all major decisions regarding licensing or product design are made there. *Id.* "135 of [Plaintiff's] 494 employees work in [Plaintiff's] Pleasanton headquarters." *Id.* Plaintiff also maintains some of its "cloud" technology servers in another Northern District facility in Sacramento, CA. *Id.* Only five of Plaintiff's 494 employees reside in the Central District of California (the "Central District") of the federal district court system. Fior Decl. ¶ 3, Dkt. 51. Plaintiff does business throughout the world (Schmidt Decl., Exh. 1, Dkt. 24) and has 39 clients in the Central District. Fior Decl. ¶ 3, Dkt. 51.

Defendant Xactly is headquartered and maintains over 73% of its domestic work force only a short distance from Plaintiff in San Jose, California. Consul Decl. ¶ 6, Dkt. 25 (117 of Xactly's 160 domestic employees are located in the Northern District at Xactly's San Jose headquarters). Defendant Cabrera also lives in San Jose. Consul Decl. ¶ 8, Dkt. 25. Defendant Xactly conducts research and development for the allegedly infringing products at its San Jose headquarters; it also conducts marketing and promotional activities there. *Id.* at ¶ 9-12, Dkt. 25. Defendant Xactly has 35 clients – 8% of its total client base – with a billing address in the Central District. Fior Decl. ¶ 4, Dkt. 51. Defendant Xactly has not represented to the Court what percentage of its client base has billing addresses in the Northern District. Defendant Xactly has participated in limited marketing events in the Central District. Consul Decl. ¶ 16, Dkt. 25. Thus, Xactly participated in only two marketing events in the Central District last year. *Id.* The costs associated with one of them, the Better Incentives Breakfast Series, represented .05% of Xactly's overall trade show budget for the fiscal year. *Id.* Defendant Xactly has no employees located in the Central District. Consul Decl. ¶ 7, Dkt. 25. Defendant Cabrera owns no property in the Central District, although he is scheduled to give a presentation at an upcoming event in Los Angeles in April 2013. Carter Decl., Exh. 1, Dkt. 52.

### III.     Analysis

#### A.     Legal Standard

28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The party moving to transfer the case bears the burden of proving that the alternative forum is the more appropriate forum for the action. *Jones v. GNC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SA CV12-01432 JAK (FFMx) | Date | March 11, 2013 |
|---|---|---|---|
| Title | Callidus Software, Inc. v. Xactly Corporation | | |

*Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

To meet this burden, a moving party must demonstrate that both private and public interests favor a transfer. In *Jones*, the Ninth Circuit set forth ten factors that district courts may consider in determining whether this standard has been met by a moving party: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of access to sources of proof, (9) the presence of a forum selection clause, and (10) the public policy of the forum state. *Jones*, 211 F.3d at 498-99. "[T]hese factors cannot be mechanically applied to all types of cases" and should be considered "under the statutory requirements of convenience of witnesses, convenience of parties, and the interests of justice." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005).

**B.    Application**

Neither party disputes that Plaintiff could have brought this action in the Northern District. MTV at 8, Dkt. 23; Opp'n at 9, n.1, Dkt. 50. In addition, neither party disputes that Factors 2, 7, 9, and 10 are neutral when considered in connection with the Motion. Thus, the application of Factors 1, 3, 4, 5, 6, and 8, which are addressed below, is an appropriate basis to determine whether Defendants have met their burden under the Motion.

1.    <u>Factor 1: The Location Where the Relevant Agreements were Negotiated and Executed</u>

Factor 1 favors transfer because the only relevant agreement in this case is the separation agreement between Callidus and Defendant Cabrera. It was negotiated and executed in the Northern District. However, this factor is of limited weight because the contract issue is not a predominant one in this action.

2.    <u>Factor 3: The Plaintiff's Choice of Forum</u>

Despite the broad discretion afforded the district court in determining whether to transfer venue, a plaintiff's choice of venue is generally afforded deference. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). "[T]he degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." *Williams*, 157 F. Supp. 2d at 1106; *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) ("A plaintiff's choice of forum is entitled to less deference, however, when the plaintiff elects to pursue a case outside its home forum."); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration.").

The Central District is not Plaintiff's home forum; its headquarters and "nerve center" are both in the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV12-01432 JAK (FFMx) | Date | March 11, 2013 |
|---|---|---|---|
| Title | Callidus Software, Inc. v. Xactly Corporation | | |

Northern District. Consequently, although this factor weighs against transfer, Plaintiff's choice is not afforded the same deference as might be accorded the choice of this forum made by a party who resides here. Accordingly, factor is not dispositive in this case. *See Allstar Mktg. Group LLC*, 666 F. Supp. 2d at 1131 (giving little weight to this factor because neither plaintiff was a citizen of the transferor forum). In addition, for the reasons stated below, this action has only a limited connection to the Central District, which further limits the degree of deference that should be accorded to Plaintiff's choice of forum. *See Williams*, 157 F. Supp. 2d at 1106 (affording minimal deference to Plaintiff's choice of forum where the underlying causes of action shared an insignificant connection with forum and the Plaintiff was not a resident of the forum).

      3.      <u>Factors 4 and 5: The Parties Contacts with the Forum and the Contacts with the Chosen Forum Relating to the Plaintiff's Action</u>

"[I]n patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity." *Amazon.com,* 404 F. Supp. 2d at 1260 (internal quotation marks omitted). "The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id.* This location is often where the development, testing, research, and marketing of the subject product occurred. *See Arete Power, Inc. v. Beacon Power Corp.*, No. CV 07-5167 WDB, 2008 WL 508477, at *5 (N.D. Cal. 2008). "This makes sense because in determining whether infringement has been established, the principal target of inquiry is the design and construction of the accused product. The trier of fact will be asked to compare the claims in the patent with the accused product-examining its development, its components, its construction, and how it functions." *Id.*

Here, both Plaintiff and Defendants are headquartered and reside in the Northern District. Xactly's production and development of the allegedly infringing devices occurs in San Jose, as does all of the allegedly unlawful marketing and promotional activity. Consul Decl. ¶ 9-12, Dkt. 25. The employees who are most likely to be percipient witnesses for Defendant Xactly are also located in the Northern District. *Id.* Thus, the "center of gravity" of the accused activity is the Northern District.

Furthermore, the local interest of the Northern District in this case is strong. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transferring case based in part on local interest of transferee district). Plaintiff's patent infringement, defamation and unlawful marketing claims "call[] into question the work and reputation of several individuals residing in or near [the Northern District] and who presumably conduct business in that community." *See id.* It follows that the Northern District has a strong local interest in this case, which adds further weight to the appropriateness of the requested transfer.

Plaintiff points to three potential non-party witnesses – two who may be called by Plaintiff and a third who may be called by Defendants – none of whom resides within either the Central or Northern District. But, the location of such out of state witnesses who may be deposed and who may be appear at trial, is not a significant factor in balancing the interests necessary to select the appropriate forum for this action. *See A10 Networks, Inc. v. Brocade Communications, Inc.*, No. CV 11-1378 JST, 2011 WL 5835374, *5 (C.D. Cal. 2011) (rejecting argument that isolated connections to other forums weighs against transfer to the "center of gravity").

Moreover, the Court is not persuaded that this action has any special or substantial connection that is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV12-01432 JAK (FFMx) | Date | March 11, 2013 |
|---|---|---|---|
| Title | Callidus Software, Inc. v. Xactly Corporation | | |

unique to the Central District. Rather, the only connection between the claims advanced and the Central District that Plaintiff identifies is that it has 39 clients and five employees here. Fior Decl. ¶ 3, Dkt. 51. However, Plaintiff does not identify what percentage of its overall client-base these 39 clients represent, nor does it claim that any of the five employees located in the Central District will be called as witnesses in this case. Plaintiff also produced evidence that it engages in numerous conferences and trade shows throughout California. *Id.* at ¶ 5. However, the only support Plaintiff provides is evidence of its participation in three trade shows in San Diego, California. *Id.* And, San Diego is in the Southern District of California. Although the burden is on the moving party to show that a transfer is appropriate, this evidence is instructive because it shows that Plaintiff has a very limited connection to the Central District.

Plaintiff's contentions regarding the significance of Defendants' connection to this forum are similarly unpersuasive. That Defendant Cabrera is scheduled to give a presentation at a conference in Los Angeles in April 2013 is not significant to the analysis. There is no evidence that he does not travel to other locales as well. Similarly, that a small percentage of Defendant Xactly's clients and marketing activities occur in the Central District is not highly persuasive.[1] Furthermore, the evidence indicates – and Plaintiff conceded – that the allegedly unlawful activity, which is Internet-based, occurs in any market where Defendants sell or market software. *See* Opp'n at 10, Dkt. 50. This reduces any "significant connection" Defendants might have to the Central District, and does provide a basis to rebut the showing that the center of gravity of this dispute is the Northern District. *See A10 Networks, Inc.*, 2011 WL 5835374, *5 (rejecting similar argument that some connection to another forum weighs against transfer to the "center of gravity"); *Amazon.com,* 404 F. Supp. 2d at 1260 (same).

Given that the Northern District has strong, local interests in this dispute, that the Northern District is the center of gravity of the allegedly infringing and other unlawful activities, and that the Central District shares only a limited connection to the underlying dispute, Factors 4 and 5 weigh heavily in favor of transfer.

        4.        <u>Factor 6: The Comparative Cost of Litigating In the Two Forums</u>

To support transfer, there must be actual cost savings to the other forum and not mere shifting of the costs between parties. *See, e.g.*, *DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1084 (C.D. Cal. 2002). This factor typically considers the location of the witnesses as part of its analysis of the comparative cost of litigating in the each forum. *See, e.g.*, *Italian Colors Rest. v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003) ("Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions."). At least one court has considered the length of the litigation in the respective forums as part of the cost consideration. *See Digitech Image Technologies, LLC v. Leica Camera AG*, No. SACV12-01677-ODW, 2012 WL 6062749, at *3 (C.D. Cal. Dec. 5, 2012) (recognizing transfer to district with a median time from filing to trial that was twice as long risked protracted litigation that would burden plaintiff).

---

[1] The Court notes that Defendants did not provide evidence that set forth similar information as to the number and percentage of its clients who are located in the Northern District. Defendants' counsel stated at argument that this was an oversight. Nonetheless, for the reasons stated above, such evidence, if proffered, would not have been central to the analysis for determining the proper venue of this action.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV12-01432 JAK (FFMx) | | Date | March 11, 2013 |
|---|---|---|---|---|
| Title | Callidus Software, Inc. v. Xactly Corporation | | | |

Defendants contend that travel-related expenses at trial for both parties will be reduced by transferring venue to the Northern District of California. Plaintiff contends that the longer median time to trial in the Northern District compared to that generally applied by this Court will mean that the cost of litigation there will be higher. Thus, the longer a case is pending, the more expensive it becomes.

The Court recognizes as a matter of common sense that increased time to trial can increase litigation costs. Thus the longer a matter is pending, the more the opportunities for discovery, motions and other pre-trial proceedings. However, the Court also notes that there is no certainty as to the amount of time that any particular matter will take and that active case management can protect against unnecessary litigation costs. Accordingly, the Court is not persuaded that this factor weighs significantly against transfer.[2]

> 5.  Factor 8: Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see A10 Networks, Inc.*, 2011 WL 5835374 at *4 (same). At the same time, courts recognize that electronic methods to transmit documents mitigates the inconvenience of access to documents relating to infringement. *See Metz v. U.S. Life Ins. Co.,* 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009). Moreover, courts generally require more than "mere conclusory allegations" of inconvenience to justify transfer under this factor. *See Allstar Mktg. Grp.,* 666 F. Supp. 2d at 1134.

Defendants are headquartered and reside in the Northern District, and keep their relevant documents there. Consul Decl. ¶ 7, Dkt. 25. In addition, although Plaintiff does not have the burden of showing that the Central District is appropriate, Plaintiff has not identified any evidence relevant to this case that is located in the Central District. Therefore, although electronic document transmission methods may mitigate the inconvenience of document access, this factor weighs slightly in favor of transfer.

*          *          *

Factors 1, 4, 5, and 8 favor transfer. The center of gravity of this dispute is the Northern District, where both Plaintiff and Defendants are headquartered and reside, where Defendants allegedly infringing products are designed and marketed, and where the only relevant agreement was negotiated and executed. In addition, the Northern District provides easier and more cost-effective access to witness and

---

[2] The Court acknowledges that additional time to trial will likely be imposed if the case is transferred. Thus, if the matter remained here, the matter could proceed as scheduled. In contrast, if the matter is transferred to the Northern District, it will likely be several weeks before a scheduling conference is conducted. However, Plaintiff assumed the risk of such a delay by selecting this venue when it filed this action. Additionally, Plaintiff argued at the hearing that a longer time to trial would harm Plaintiff because the parties are competitors, Thus, Plaintiff contends that the longer Defendants' conduct proceeds, the greater the potential injury to Plaintiff. This argument is not persuasive for two principal reasons. First, such a consideration is not focused on the relevant factor -- considering the costs of the litigation itself. Second, to the extent that Plaintiff contends that Defendants' present conduct is causing Plaintiff irreparable harm, Plaintiff may seek preliminary injunctive relief.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | SA CV12-01432 JAK (FFMx) | Date | March 11, 2013 |
|---|---|---|---|
| Title | Callidus Software, Inc. v. Xactly Corporation | | |

sources of proof, given that it is the hub of activity that underlies this controversy. In short, the parties to this action have significant ties to the Northern District, and the Northern District has a strong local interest in its resolution. In contrast, the connection to the Central District is quite limited.

Factors 2, 7, 9, and 10 are neutral. Thus, only two factors do not support transfer and neither is compelling. Factor 3 weighs only slightly against transfer, because Plaintiff's choice of forum is entitled to less deference in this action given that Plaintiff does not reside in the Central District. Factor 6 -- the comparative cost of litigation -- is neutral, and therefore weighs slightly against transfer. Accordingly, a balancing of all of the *Jones* factors favors transfer.

Finally, the convenience of witnesses, which is properly accorded significant weight in determining whether a transfer under § 1404 is appropriate, supports the transfer of this action. *See, e.g., Denver & Rio Grande Western Ry. Co. v. Brotherhood of Railroad Trainmen,* 387 U.S. 556, 560 (1967) ("[V]enue is primarily a matter of convenience of litigants and witnesses."); *A.J. Industries v. U.S. District Court,* 503 F.2d 384, 386-87 (9th Cir. 1974) (discussing the importance and history of the convenience of witnesses in evaluating a § 1404 transfer). The majority of potential witnesses reside in the Northern District, no witnesses in the Central District have been specifically identified, and out of state witnesses would have to travel whether the action is maintained in the Central or Northern District. *See Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1148 (C.D. Cal. 2009) (finding that convenience weighed in favor of transfer to forum where majority of potential witnesses were located); *Arete Power, Inc.,* 2008 WL 508477, at *9 ("But as [plaintiff's] witnesses do not reside in this district, they would be inconvenienced by travel regardless of where the case is tried.").

### IV.    Conclusion

For the foregoing reasons, the Court GRANTS the Motion. This action is hereby transferred to the United States District Court for the District of Northern California.

**IT IS SO ORDERED.**

                                                                                          :
                                                             Initials of Preparer    ak